The first case is Bay v. City of New York. Let me just make sure counsel is here. Mr. Rosinas, am I pronouncing that right? Yes, Your Honor. Rosinas, that's right. Hello. Okay. So Mr. Rosinas and Mr. Riley, are you here? I am. Good morning. Okay. And you each can hear and see the judges all right? Yes, Your Honor. Good. All right. So Mr. Rosinas, you have ten minutes total, but you've reserved three minutes for rebuttal. So that gives you seven minutes out of the gate, and you may proceed. Thank you, Your Honor. Good morning, and may it please the Court. I'm Alan Rosinas. I represent the City Appellants Cross-Appellees. Your Honor, the regulation from OSHA in this case could not be clearer. It prohibits employees who have facial hair that comes between the sealing surface of a respirator and the face from wearing the kind of tight-fitting respirators that full-duty FDNY firefighters have to wear on a regular basis. So you couldn't get one with what you've got there? I could not, Your Honor. I could not. Despite the clear prohibition on facial hair, Your Honors, plaintiffs seek a medical accommodation that would allow them to have closely cropped facial hair everywhere, including where the skin meets the seal. Under Kaiser v. Wilkie, the unambiguous text of the regulation controls. The District Court ignored the plain text of the regulation and found ambiguity where none exists. Plaintiffs keep making the same mistake. Your Honors, we said this in our brief back at the stay stage, but the constant plain text is overused. Lawyers often say plain meaning exists where it doesn't. They often just mean meaning. But here, this regulation really does have a plain meaning. It clearly says facial hair is not permitted between the seal and the face. If the primary text of the regulation weren't clear enough, and it certainly is, the fact that the regulation elsewhere prohibits, excuse me, quote, any hair growth, unquote, between the respirator seal and the skin from doing a mandatory fit test that you have to do before you can wear the respirator just underlines the point. Can I ask you, why was the exemption allowed for multiple years then? It wasn't clear to me, based upon the briefing, whether or not the FDNY wasn't aware of the regulation, or they interpreted it differently. Can you explain that? No, the answer is I don't know. The record doesn't make it clear. There's no indication. Plaintiffs keep saying that we interpret the regulation differently before. There's no indication that we did. If you look at the letters that the FDNY sent when it was granting the accommodation to the various plaintiffs, they don't even mention the regulation. So there are two possibilities, Your Honor. It seems somewhat likely to me, although this is speculation on my part, I suppose, that at that point in time the FDNY overlooked the regulation. But whether it was overlooked or whether it was misinterpreted, I respectfully contend, makes no practical difference. Even if the FDNY misinterpreted the regulation in the past, the regulation is clear and the FDNY is bound by it. The FDNY rule is a little different than the OSHA one, right? The FDNY bars any patient. Well, it would seem that OSHA allows you to have a little Tom Dooley mustache, or the one that Gomez Adams has, as long as it doesn't get between the seal and the respirator, right? There's definitely a difference, Your Honor. I think the difference is I actually think, if I remember correctly, the FDNY policy allows a short mustache to about here, has to be over the mouth. But, yes, the OSHA regulation also permits, for instance, a shortly trimmed goatee that doesn't go into the sealing area and sideburns, shortly trimmed, that don't go into the sealing area. So, yes, there is a difference. The safety floor set by the regulation is exceeded by the restrictions that the FDNY policy imposes. Having said that, and, of course, plaintiffs cite that in their reply brief, and they say, well, that shows that even if our interpretation is right, we should lose. To me, that's a total non sequitur, and the reason it's a non sequitur, Your Honor, is they are seeking, throughout this litigation, they have sought an accommodation to have closely cropped facial hair everywhere, including under the sealing area. So, the fact that the, I'm sorry, someone's speaking. I was going to say, what are we to make of this letter referenced by the District Court of May 9, 2016, in which OSHA talks about the possibility of other types of respirators not requiring a facial seal, and they refer to loose-fitting powered air purifying respirators, and also hooded powered air purifying respirators. What are we to make of that? There are some respirators that are permissible in some contexts that are not the kind that we're talking about here, but the regulation requires so-called SCBA, self-contained breathing apparatus respirators, for interior structural firefighting. So, the problem with those kinds of respirators, Your Honor, is that those are not tight-fitting enough to do the kind of firefighting that FDNY firefighters do, fighting fires inside structures. Those kinds, and the FDNY researched that. The record shows we looked into the question of whether any of those could work, but the problem with those was they were not approved by NIOSH, the CDC Institute that certifies SCBA respirators under the regulation. Those were not certified by NIOSH for this kind of firefighting, for the kind of firefighting that the FDNY does every day. And the plaintiff's expert at his deposition admitted, Dr. Abraham, and I have two experts, but Dr. Abraham admitted that those kinds of respirators, the hooded respirators and the other kinds discussed there, are not certified by NIOSH for the kind of firefighting that the FDNY does. So, to go back to Judge Bianco's question, though, if there's nothing in the record that explains the past tolerance of closely cropped facial hair, on summary judgment, don't we assume that contrary to your client and assume that it does not think that the OSHA regulation has to be read as strictly as you're now saying? I'm sorry. I mean, the lawsuit after all is against your client, not against FDNY. Well, I think, Your Honor, the regulation, I think, speaks for itself. Even if you think, Your Honor, that it's maybe less than completely clear, if you look at the very May 2016 letter that you just raised, Your Honor, that letter itself says, respirators shall not be worn when facial hair comes between the sealing surface of the face piece and the face. That's at 169, the joint appendix. I may not be clear. If I were to agree with you on that, with the knowledge that the FDNY tolerated facial hair for a number of years while this regulation was still in place and while laws and regs required you to comply with OSHA, doesn't that raise a question of fact as to how this should be interpreted and whether the fire department is able to provide an accommodation? I would say no, Your Honor, because it's ultimately a question of law, the proper interpretation. Where the text is clear, you don't even need to look beyond the regulation. And even if you were to show the text was unclear, the interpretive letters from OSHA that would be helpful to clarify any ambiguity all point the exact same way. The May 2016 letter that the District Court relied on cited favorably to an April 2011 letter that makes it even clearer. The April 2011 letter, which is on A94 of the record, says that users must be, quote, clean shaven where the respirator seals against the face. So to the extent, Your Honor, that there's any ambiguity, that ambiguity is resolved by the agency's clear statement of how to resolve it. And we don't get to it. So the FDNY, insofar as it misinterpreted the regulation in the past, was simply wrong. And I say I'm past my time, into my time for rebuttal, so if there are no other questions, I'll reserve the rest of my time, Your Honors. All right. You've got three minutes for rebuttal. We'll now hear from Mr. Riley. Mr. Riley? Good morning. Nicholas Riley for the Plaintiff-Appellee Cross-Appellants. With the Court's permission, I'd like to reserve two minutes of time for rebuttal on the cross-appeal. I don't usually do that. I mean, if I think we need something, maybe we will, but I think normally we'll just do it with one rebuttal. Sure, fair enough. But if the other judges have a different view as we get there, I'll let them certainly ask additional questions. But go ahead. Thanks, Your Honor. I guess I'd like to just start very briefly by addressing Judge Raji's last question, which also relates to the question Judge Bianco asked about whether FDNY was aware of the OSHA regulation during the prior accommodations period. I think the answer to that, I think, can be found at page 122 of the appendix, which is FDNY's grooming standards. This was the grooming standards that were issued in the year 2012, so three years before the accommodations period began. And these are the grooming standards that also relate to the clean shave policy, of course, that's at issue here. They're in conjunction with each other in the FDNY's policy manuals. It refers directly to the OSHA. Isn't the problem for you that the FDNY, whatever their interpretation is, is bound by New York labor law 27A4. This is no FDNY regulation. This is state law. And that state law obliges them to comply with the OSHA regulations, and the regulation 1910.134, lots of subparts, says that you can't have tight-fitting face pieces with any facial hair that comes between the sealing surface of the face piece and the face. I mean, I'm having a problem understanding how the FDNY is not obliged to comply with that, whatever they may have thought in the past. Right. So to be clear, we agree that FDNY is bound by the regulation, the state regulation which adopts the OSHA regulation. We think that FDNY is misreading the OSHA regulation. So to be clear, we think FDNY is earlier reading. And again, we do think they were aware of the regulation because they cite it in one of their policies at 122. We think that was correct, and we think their changing course on this reveals the ambiguity in the regulation, ambiguity as to the specific question at issue here, which is does the regulation prohibit this 1 to 3 millimeters of hair growth. The reason we think that you cannot read the regulation in this hyperliteral way to say absolutely no hair in the sealing area is because that would be impossible to achieve. Right. Just men naturally grow a 5 o'clock shadow over the course of a work shift. We think it's unlikely that OSHA intended to require employees. And remember, this is a regulation that applies not just to fire departments, but across a vast range of industries, everyone that wears a respirator. Mr. Riley, let me ask you about the April 1, 2011 interpretive letter. Let's put aside the 2016 one for a moment that the district court relied upon. Would you agree with me that the 2011 letter clearly says you have to be clean shaven and says it will require the wearer's face to be clean shaven where the respirator seals against it, and then it even goes on to say even modest facial hair growth can have a significant adverse impact on the respirator seal. So isn't that clearly saying that you can't have any facial hair? Putting aside the issue of 5 o'clock shadow, you have to go into work clean shaven. Right. So I agree that that language is in that 2011 letter. I think you have to read that language. Again, you can take the isolated sentence from that letter and read it in context with all of the other things OSHA has said about this, including the 2003 letter to Senator Levin, OSHA's first guidance on this issue, where it refers to bearded employees and specifically says that those bearded employees have to trim their beards. That's not language that you use, I think, if you intend to require complete clean shavenness. But either way, you want to raise a point about, well, maybe at the very least the regulation requires you to start your shift clean shaven. This is a point that FDNY also raises in its reply brief. Reading the regulation that way, I should say, does require you to add words to the regulation. So at the point where we're going to only apply the regulation to the start of the shift and we're going to set aside the idea of 5 o'clock shadow, that I think inherently recognizes that the plain text reading is not on its own what FDNY says it is, that you have to do some construing, that you have to graft new words onto the regulation in order to get to where FDNY wants to get. But I think in addition to all that, just going back to Judge Raji's question in the beginning, even if this court disagrees with everything I just said, even if this court is inclined to adopt the isolated language from the 2011 letter as the binding final reading of what this regulation means, then we still have to go back to the question Judge Sullivan asked, which is, well, what do you do with the fact that FDNY's policy is more restrictive than the OSHA regulation, even under FDNY's own reading of that regulation? And I think the answer is, even if this court, again, adopts this FDNY's reading and says you have to be completely clean-shaven in the ceiling area, they still have not produced any evidence to justify the restrictions that go beyond the ceiling area. And we're talking here about plain text. Can I interrupt for a second? I'm sorry. But is that the accommodation you're looking for? In other words, it seems to me that your clients are not seeking to have a Thomas Dewey mustache or a Gomez Adams mustache. They're looking for an accommodation that allows them to have a short beard, including in the ceiling area, right? That's exactly right. I would quibble with they want a short beard. I think we're talking about one to three millimeters of facial hair. It's really like the equivalent of five o'clock shadow. But more to the heart of your question, that is the accommodation that they requested. Again, the same accommodation that they requested and received previously. However, that includes, and they would accept, any accommodation that allows them to grow any facial hair. Because we're talking here about individuals with a condition, a medical condition, that makes it extremely dangerous and painful to shave any amount down to the skin. And so if you're in a situation where that's your life and, again, they've been shaving in order to comply with FDNY's current regulation, even though it subjects them to extreme pain and the risk of disfigurement. However, if they were allowed to grow facial hair on the chin, the Gomez mustache, anything that's allowed beyond, which again, OSHA does permit, would save them from having to expose themselves to some amount of pain. I think on page 8124 of the record, the mustaches are allowed, that Judge Sullivan is referring to, as well as the sideburns. I think the only daylight between FDNY's policy and the regulation as construed is a goatee, right? That's the only difference, is a goatee. I think that's the large difference because, again, I think you're looking at the right part of the record. Anything below the lower lip, FDNY permits. There are clearly goatees and other examples that allow hair below the lower lip that OSHA permits. I think it's also a sideburns issue. If you look at the NIOSH chart, the graphics that FDNY, this isn't in the record, but FDNY cites it in its brief on, I think, page 6 of its opening brief. That NIOSH chart clearly permits some sideburns that go beneath the lower ear, the lower extremity of the ear. That's also prohibited under FDNY's policy, but I think you're largely right. Was this argument made to the district court, that an alternative accommodation would be this more modest proposal that you're urging here? I don't know that it was raised explicitly in the briefs. Again, plaintiffs won below on the entire accommodation. Right, but my concern is that to the extent you're asking us to find that there could be such an accommodation, I wasn't sure I saw in the record that the FDNY had the occasion to justify even this limitation, and so I'm not sure we have a record on why they wouldn't give you that accommodation. I understood the case to be pursued on the full limited facial hair accommodation. Did I miss something? I don't think you missed something in that I don't think that below there is this explicit backup, specifically referring to this area of the face request for an accommodation. I think the nature of an accommodation is that in requesting the 1 to 3 millimeters across the entire face, that includes some facial hair on part of the face. I would also note that if there's a question about FDNY's awareness of the argument or the need to justify this, clearly this came up in district court. The OSHA guidance that's referenced here refers explicitly to goatees, and that argument was raised below the idea that there are certain types of facial hair that OSHA permits that are prohibited under the FDNY's policy. Again, I don't know that there's a formalistic requirement under the ADA that employees have to request. For instance, we want facial hair covering 6 inches of our face, and in the alternative we want it covering 5 inches of our face, and in the alternative we want it covering 4 inches of our face. I think it's a more practical... That's not what's going on here. I mean, this is quite a difference. I mean, this is whether or not facial hair that doesn't go under the seal can be prohibited, right? That's right. That is the accommodation, the backup accommodation. And I didn't understand that the case was ever presented to the district court on that theory. I understood it to be presented on the theory that the degree to which your clients want to have facial hair, even under the seal, should be accommodated. Did I miss something? If I can answer... Please. No, you did not miss anything, again, that explicit. Again, our position is the nature of accommodation is one that the greater includes the lesser here, and by requesting this amount of facial hair on the entire face, they were also requesting it on the parts of the face where OSHA would permit. I can see my time is up, unless the court has other questions. I had one question on your cross-appeal. On the disparate treatment claim, I saw there was a reference in the record to a Miss Wilson saying that Caucasian firefighters were being allowed to have facial hair, even under the FD&I policy, inconsistent with the OSHA regulation. It was pretty general. I was just asking you, because I was going to ask the city about this too, but is there anything else in the record other than her generalized statement that I've seen Caucasian firefighters who get to walk around in violation of this policy? Yeah, I believe some of the other... Miss Wilson, obviously, is not a party to this case, but some of the plaintiffs also testified to seeing the same. I would point the court, for instance, to pages 803 and 804 of the record, Terrell Joseph's deposition, where he specifically identifies by name his captain, who had a handlebar mustache. I think Kevin Hamilton, who's, again, also not a party to this case, but his deposition is in the record, speaks, I think, at pages 2332 through 2335 about having received informal approval to grow some facial hair prior to the official... He eventually did receive an official accommodation, but he talks about implicitly receiving approval and how other firefighters had done the same. So some of that's there. Just one small point. You referred to this as a disparate treatment claim. The only claim we're pressing on appeal is the disparate impact claim. So we think what you're identifying is still relevant because it shows, again, the lack of consistent enforcement still goes to this business necessity question under disparate impact analysis, but we were not invoking it to show disparate treatment with intentional discrimination. Thank you for that clarification. Unless there are other questions, I can see my time is up. All right. Thank you, Mr. Vidal. Thank you. We'll now hear from Mr. Rosinas for three minutes and move on. Thank you, Your Honor. I want to address the point about the biological reality that men's hair grows at all times. I'd say a couple of things. First, I respectfully disagree with Mr. Riley that the idea that you have to have facial hair at the start of your shift is adding to the text of the regulation. What it's saying is, look, you have to be clean-shaven, and if that means at the start of your shift, it means throughout to the degree possible. In fact, as I understand, sometimes, although this is not in the record, I should say, but I'm told by FDNY that officers do have the ability to tell firefighters during their shifts that they need to shave to come into compliance with the grooming policy. But either way, there's a more fundamental point to make as well, which is that everyone's stubble grows, the clean-shaven people and the people who start the shifts that closely crop facial hair. So the biological reality is you're still much safer when you comply with this regulation to the degree humanly possible than when not. I want to go back to just what exactly is the accommodation here, which might be a moving target, but it seems the OSHA reg requires firefighters to be clean-shaven at the point of seal. Do you agree with that? Yes, I agree with that, Your Honor, yes. But the FDNY is more restrictive in terms of facial hair. Do you agree with that? Yes, Your Honor. Okay. Is there anything in the record, was there any discussion below about why that extra restriction that goes beyond OSHA is necessary or justified here? I don't think so, Your Honor, and as I said earlier, it's not relevant because they have never been asking for the lesser regulation that they're talking about now. And that was not the basis, it's not the basis either of their arguments in their briefs here, and it's not, it wasn't the basis of the district court's decision. So it's really, it's just not material, it's not a material difference because they're asking for it to have facial hair under the seal. So you're saying that that new accommodation or that lesser accommodation, they'll have to start all over again? I think so, Your Honor, or at least this court, if it otherwise agrees with the argument, that we're making, I think the court would have to do at the very least would be to vacate the district court decision and remand for them to make that argument in the district court in the first instance. But I would say that ship has sailed, Your Honor. They have not been asking for that throughout this litigation. They have never asked for that throughout this litigation, and I don't frankly see how it helps them. I mean, they say that they have a condition that prevents them from shaving down to the skin. So now they're saying that they will shave down to the skin. It doesn't even make sense in the context of the disability that they have. You know, they're saying they're going to shave down to the skin in a certain part. Well, as I understood counsel, the less they have to shave, the less pain they're experiencing. And again, I am saying this only as I understood counsel. Therefore, while they would prefer not to have to shave at all, they would like you to accommodate them at least to the extent of not having to shave areas that don't go under the sealed facial mask. Now, you suggested we vacate and send this back to the district court. But I'm wondering whether the parties really need litigation on that question or whether the FDNY is prepared to entertain an accommodation that doesn't put you in violation of OSHA. I think we're always open to settling cases at any stage of litigation, Your Honor. I have never understood. These aren't employees you're looking to fire for misconduct or anything like that. And I don't understand you to be disputing the bona fides of the condition. Your position so far has been we can't accommodate these folks because we are bound by state law to comply with an OSHA regulation. So now Mr. Riley is saying you don't have to comply with it with respect to goatees that are beyond the seal. Are you prepared to give them that accommodation? I can't say, Your Honor, without talking to my client. I think it's a very different case if they're willing to. It's important to bear in mind that there are two aspects to this. You can't have under the OSHA regulation, setting aside the FDNY policy, under the OSHA regulation, you can't have hair under the sealing area. You also can't have hair that protrudes into the sealing area. So as long as their facial hair elsewhere was not protruding in, it might be something that the FDNY would consider. But I can't speak for my client, of course. But, yeah, I think, Your Honor, if it complied with the OSHA regulation, which we have to be careful and recognize, probably because of the protruding aspect that it doesn't necessarily bar only under the seal, although it mainly bars that. But as long as it were consistent with the OSHA regulation, it may be something that we could pursue. This is almost getting into settlement, of course, Your Honor, but it's certainly something that if Mr. O'Reilly and I have a good relationship, if he wants to talk about it with me, I can bring it back to my client. You know, again, certainly as a matter of principle, we're willing to consider settlement at any stage, Your Honor. I don't need to sleep with any other questions. I just wanted to ask Mr. Rosinas about the disparate impact claim. Mr. Rosinas, as you heard, Mr. O'Reilly pointed to some evidence in the record. Ms. Wilson was one, but he pointed to other references in the record about differing treatment between Caucasian firefighters and African-American firefighters. Can you address that? Sure, Your Honor. So, I mean, first of all, the fact that they're making a disparate impact claim only is important, because to me, the remedy then, even if the evidence were probative, which I don't think it is, and I'll get there in a moment, at least not very probative, very speculative. Even if the evidence were probative, the fact that they're making a disparate impact claim only would mean that they're not entitled to damages under a disparate treatment theory, they're not entitled to anything else under a disparate treatment theory. The remedy, it seems to me, would be that everyone be treated equally to remove the disparate impact, which would just mean making sure that the policy is applied across the board, including to white firefighters. It would not result in them getting the accommodation that they seek. But even saying that aside, it's important to note the ambiguities in the testimony that they gave. Ms. Wilson's statement, I think, was hearsay. I'll defer to the Court on that. But the testimony that the firefighters gave didn't make it clear that these were full-duty firefighters. You can be in the field, even. Some of them, there wasn't a reference as to where they saw them. But you can be in the field and not be a full-duty firefighter, because there's a unit called the Rest and Care Unit that aids full-duty firefighters in the field while they're fighting fires, rising with water, things like that. And also, there's no indication that the firefighters who were, you know, this is all uncorroborated testimony, but who were referred to in the testimony were, in fact, in compliance, understood by the FDNY to be in compliance, rather than that they were disciplined because of it. So I think that the evidence is very speculative. And to the extent that it speaks of disparate impact, since they are not pressing a disparate treatment claim on appeal, I agree with that. You know, there's no basis for relief for them in any event, Your Honor. Thank you. Thank you. Let me just ask my fellow panelists if they have any additional questions for Mr. Riley, who had asked for some silver bottle. But if there are no other questions, then I don't think we'll do it. All right. So we'll reserve the decision. Thank you. Very well argued on both sides.